UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  17-CV-8300 (JMF)(SN)<br>) |
| JOHN MADSEN, ANDALUSIAN RESORTS and SPAS, INC., and BERNARD FRIED, | )<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR THE IMPOSITION OF A CIVIL MONEY PENALTY
AGAINST DEFENDANT JOHN MADSEN**

Paul G. Gizzi (gizzip@sec.gov)
Brenda W.M. Chang (changb@sec.gov)
John C. Lehmann (lehmannj@sec.gov)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-1100

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") respectfully submits this reply memorandum of law in further support of its motion for the imposition of a third tier civil monetary penalty against defendant John Madsen ("Madsen"). On June 29, 2018, the Commission filed the motion with the Court seeking the imposition of such a penalty (docket no. 51-52). On July 18, 2018, Madsen filed his opposition to the motion (docket no. 53). Nothing in Madsen's opposition weighs against ordering a third tier penalty as punishment for Madsen's fraudulent conduct – indeed, his filing is essentially a rambling diatribe denying any responsibility for the conduct he engaged in as outlined in the complaint, which clearly violates his consent agreement with the Commission. Madsen has demonstrated no remorse for his role in orchestrating the fraudulent scheme involving Andalusian Resorts and Spas, Inc. ("ARSP") and his filing of his opposition indicates he has no intention of complying with the terms of the consent. Accordingly, the Court should send Madsen, now a 3-time financial fraudster, a strong message by imposing a third tier penalty for each of his violations of the federal securities laws.

## I. BACKGROUND

As alleged in the complaint and described in the Commission's opening brief, from at least November 2013 through May 2014, Madsen orchestrated an unsuccessful (due to the Commission's timely trading suspension) pump-and-dump securities fraud. (Compl. ¶ 1, docket no. 1.) Among other means, Madsen carried this scheme out by recruiting Bernard Fried ("Fried") to act as straw-man President and Chief Executive Officer ("CEO") of ARSP to conceal Madsen's own criminal and regulatory background, and directed Fried to issue materially false and misleading press releases about ARSP. (Compl. ¶¶ 2-4.) As a result of his conduct, Madsen violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) and (c), and Madsen also aided and

abetted ARSP's and Fried's violations of Section 10(b) and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).  (Compl. ¶ 7 and Second and Third Claims for Relief.)

On February 28, 2018, Madsen consented to the entry of a judgment, ordering an injunction and penny stock bar, and providing that the Commission's claims for monetary relief (disgorgement plus prejudgment interest and civil money penalties) would be resolved by motion of the Commission.  (Consent, docket no. 22-1.)  Madsen executed the consent "[w]ithout admitting or denying the allegations of the complaint (except as provided herein in paragraph 5 and subject matter jurisdiction, which Defendant admits)."  (Consent ¶ 2.)  Paragraph 5, in turn, provides that Madsen "understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy 'not to permit a defendant . . . to consent to a judgment . . . that imposes a sanction while denying the allegations in the complaint . . .,' and 'a refusal to admit the allegations is equivalent to a denial, unless the defendant . . . states that he neither admits nor denies the allegations.'"  (Consent ¶ 5.)  Further, Madsen agreed that he "will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis."  Madsen also agreed that, "in connection with the Commission's motion for disgorgement and/or civil penalties, . . . (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; . . . [and] (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court."  (Consent ¶ 3.)

On March 9, 2018, the Court entered a judgment based on Madsen's consent, and on March 12, 2018 the Court entered an amended judgment to correct an error in the format of the original judgment.  (Docket no. 24, 27.)

In his opposition to the Commission's motion, Madsen argues that the Court should not order a penalty or, if it does, the penalty should be no greater than $3,000 to be commensurate with the monetary relief ordered against Fried. (Madsen Opposition Br. at 1-2.) Fried consented to a final judgment, which the Court entered, that ordered disgorgement of $3,000 plus prejudgment interest of $311.44 for a total of $3,311.44. (Docket no. 18, ¶ IV.) Fried's disgorgement and prejudgment interest obligation is to be offset by the anticipated entry of an order of forfeiture and/or restitution when Fried is sentenced in *U.S. v. Fried*, 17-CR-607 (E.D.N.Y.). Fried was not ordered to pay a civil penalty in the civil final judgment entered as to him; however, in the parallel criminal action, on November 8, 2017, Fried pled guilty to one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, based on the same conduct alleged in the complaint concerning ARSP and similar conduct involving another security. *See U.S. v. Fried*, 17-CR-607 (E.D.N.Y.) (docket no. 3, 10).[1]

Madsen also argues that the Court should consider what he refers to as "historical facts" as mitigating evidence, none of which has been entered into the record of this proceeding or contained in the allegations of the complaint. (Madsen Opposition Br. at 3-5.) Then Madsen offers a response to the statement of facts in the Commission's opening brief. (Madsen Opposition Br. at 5-10.) None of this is relevant to the issue now before the Court. As described below, Madsen is simply seeking to contest the allegations in the complaint, and he is precluded from doing so by the terms of his consent to this Court's entry of an amended judgment against him on March 12, 2018. Indeed, doing so also clearly violates the "no admit or deny" provisions of the consent.

---

[1] Other Commission enforcement cases reflect resolutions not involving the imposition of civil penalties as to defendants who pled guilty to criminal charges in a parallel criminal action.

## II. ARGUMENT

**A. Madsen is precluded from contesting the allegations in the complaint**

Madsen's opposition contains extensive factual recitations that flatly challenge factual allegations in the complaint. Madsen is precluded from doing so. As described above, Madsen executed a consent to entry of judgment on February 28, 2018 in which he expressly agreed that, in connection with this motion, he would be "precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint," and "for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court." (Consent ¶ 3.) Also, Madsen agreed that he "will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." (Consent ¶ 5.)

In direct contravention of his agreement, Madsen submitted various facts in his opposition brief that directly contradict and flatly contest the allegations in the complaint supporting the Commission's claim that Madsen engaged in securities fraud with scienter. These submitted facts, not in evidence nor alleged in the complaint, must be disregarded in the Court's determination of a proper civil penalty. The facts alleged in the complaint were "conclusively established" upon Madsen's execution of the consent and this Court entering the judgement. *SEC v. Siris*, 773 F.3d 89, 92 (D.C. Cir. 2014) (quoting *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1109 (D.C. Cir. 1988)). A defendant cannot enter into a bifurcated settlement with the Commission, and when it is time to resolve the monetary aspects of the case suddenly violate the defendant's consent by denying the facts in the complaint outright or through various defensive claims, such as advice of counsel.

In *Siris*, the Commission filed a complaint in district court alleging, *inter alia*, that Siris engaged in a pattern of insider trading. Siris similarly consented to the entry of a final judgment

4

and agreed that, in any disciplinary proceeding before the Commission, he would not be permitted "to contest the factual allegations of the complaint." *Id.* at 93.  But in the administrative proceeding before the Commission, Siris, like Madsen here, sought to contradict the allegations of insider trading in the guise of presenting mitigating evidence.  The D.C. Circuit rejected that argument.  The *Siris* court determined that the Commission "was entitled to rely on the allegations of the complaint in deciding" whether or not to bar Siris from the securities industry.  *Id.*at 96.  The court ruled that the Commission had permissibly "rejected Siris's purported mitigation evidence that, in reality, constituted a collateral attack on the consent judgment." *Id.* ("that evidence constituted an impermissible collateral attack on the consent judgment, and the Commission could properly refuse to consider it").

This Court should similarly disregard Madsen's "factual assertions."  As noted above, Madsen's uncorroborated factual assertions in his opposition contradicting the allegations in the complaint should not be considered credible by this Court.  As with *Siris*, the Court should rely exclusively on the allegations of the complaint, which were summarized in the Commission's opening brief, to decide whether to impose a civil penalty and the amount of any penalty to be ordered.

**B.  A third tier penalty is appropriate as to Madsen**

For the reasons stated in the Commission's opening brief, the Court should order against Madsen a third tier penalty for each of his violations of the federal securities laws.  Madsen's conduct was egregious and done with a high degree of scienter, was recurrent and not isolated, and created the *risk* of substantial losses to the investing public.  *See SEC v. Tourre*, 4 F. Supp. 3d 579, 593 (S.D.N.Y. 2014).  Also, other than a passing reference in the opposition brief, Madsen has not submitted any evidence concerning his current or future financial condition or any other mitigating facts to support a lower penalty – the fact that the SEC timely halted trading

5

in ARSP and thereby prevented actual investor harm should not be considered a mitigating fact.[2] Madsen's claim of total reliance on attorney Andrew Farber ("Farber") for every act and decision with regard to his conduct (or lack thereof), even in the drafting and approval of the **April 6, 2014** Mona Lisa Hotel letter of intent and in approving the content of the fraudulent **May 12 and 14, 2014** ARSP press releases (Madsen Opposition Br. at 8-10), is ludicrous and certainly not a mitigating factor. The Court should disregard Madsen's assertions in his brief of reliance on counsel.[3] The Court should not reduce the penalty based on any purported mitigating factors espoused by Madsen and should strongly take into consideration Madsen's unfounded (and false) assertions made in his opposition brief when calculating an appropriate penalty amount.

Madsen also makes the following statements that are nothing short of impermissible denials of allegations in the complaint: "Madsen did not gain control of Andalusian Resorts and did not recruit Fried to act as straw-man CEO" (Madsen Opposition Br. at 6); "to suggest, that Fried and implying Mr. Goldwright [sic], were simply straw-men acting under the direction of Defendant, Madsen is untrue" (Madsen Opposition Br. at 8); "Defendant, Madsen, points out that no press releases were accomplished at his direction to public individuals or entities" (Madsen Opposition Br. at 9); and "Defendant, Madsen, did not intend to issue any misleading statements . . . Any and all press release issues required the authorization and approval" of

---

[2] In administrative proceedings, the Commission permits a respondent to submit evidence in mitigation of respondent's misconduct. *See, e.g., Matter of John S. Brownson*, Release No. 34-46161, 2002 WL 1438186, at *2 n.10 (S.E.C. July 3, 2002). In contrast, in determining penalties, district courts have limited such mitigating evidence to the consideration of a defendant's financial condition. *See, e.g., SEC v. StratoCom Corp.* 89 F. Supp. 3d 357, 373 (N.D.N.Y. 2015).

[3] If the Court were to consider Madsen's assertions of reliance on counsel, it should be noted that the Commission is in possession of evidence that by at least March 2014 – *i.e., before* the execution of the letter of intent in April 2014 and the dissemination of the fraudulent press releases in May 2014 – Madsen retained counsel to pursue legal claims against Farber with regard to ARSP. This evidence totally undermines any argument that Madsen's fraudulent conduct as alleged in the complaint was done with approval of his purported lawyer Farber.

counsel "to insure that Andalusian was in compliance with all SEC rules and regulations relating to press releases" (Madsen opposition Br. at 10).  Finally, Madsen proffers various facts throughout the brief about the unsavory nature of counsel[4] and others, presumably in an effort to show that he was not as bad an actor as others who were not charged in this action.

As noted above, the Court should not consider Madsen's unsupported (and actually refuted) assertions of supposed mitigating facts, and should determine the penalty based on the allegations in the complaint.  Those allegations show that Madsen's conduct merits a third tier penalty.  Madsen gained control of ARSP, recruited Fried as straw-man CEO to conceal Madsen's criminal and regulatory history, placed the control bloc of ARSP stock in Fried's name but retained actual ownership through an illusory put option, directed Fried to issue multiple false and misleading press releases about ARSP and its purported intention to acquire the Mona Lisa Hotel, recruited persons to help generate interest in and manipulate the price of ARSP stock, and failed to verify ownership of the Mona Lisa Hotel prior to directing Fried to issue press releases touting the letter of intent to acquire the hotel.

Regarding Madsen's assertions that he relied on counsel (and as noted, *supra*, note 3 could not have happened), at most such a defense, if established, might weigh in the analysis of the degree of scienter.  To establish such a defense, Madsen would have to prove that he made complete disclosure of the relevant facts to counsel, received advice from counsel that the conduct was legal, and relied in good faith on the advice.  *See SEC v. Leffers*, 289 F. App'x 449, 451 (2d Cir. 2008) (citing *Markowski v. SEC,* 34 F.3d 99, 104-05 (2d Cir. 1994)).  Madsen has made no such showing, nor could he in light of his consent to entry of judgment and the conclusive nature of the allegations in the complaint against him.  *See id.* (defendants were

---

[4] For example, Madsen complains that counsel authorized the payment of funds related to reviewing the third party website containing information about Madsen's fraudulent conduct. (Madsen Opposition Br. at 7.)

estopped from pursuing an advice of counsel defense based on a prior court having found defendants engaged in securities fraud, which "implicitly but necessarily, rejected any defense of good faith reliance on counsel"); *see also SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (precluding evidence that lawyers attended or set up meetings where defendant could not establish an advice of counsel defense). The Court should disregard Madsen's allusion to any advice he received from counsel.

Further, Madsen's conduct in submitting an opposition that is replete with denials of allegations in the complaint should also be considered as further proof that a third tier penalty is appropriate. It is yet another example of Madsen acting egregiously and knowingly engaging in conduct that he knows is prohibited – in this instance prohibited by his voluntary agreement not to challenge the facts alleged in the complaint. He acted with similar disregard for the securities laws when he organized the fraudulent scheme with regard to Andalusian. Madsen should be strongly punished for his conduct and to deter him (and others) from engaging in such wrongdoing in the future. *See SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 567 (S.D.N.Y. 2009) ("penalties are designed to deter future violations of the securities laws and thereby further the goals of 'encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry'") (quoting *SEC v. Palmisano,* 135 F.3d 860, 866 (2d Cir. 1998)).

Finally, it is irrelevant that others may have been involved in the conduct underlying the allegations in the complaint. In determining penalties, the factors the Court considers relate to *Madsen's* conduct. His conduct is no less egregious because of, and his degree of scienter is not ameliorated by, the conduct of others.

The Commission therefore respectfully requests that the Court impose the maximum available civil penalty, in an amount that the Court determines to be appropriate.

8

### III. CONCLUSION

For all the foregoing reasons, and the reasons stated in the Commission's opening brief, the Commission respectfully requests that the Court enter a Final Judgment against Madsen that imposes a third tier civil penalty.

Dated: New York, New York
July 27, 2018

Respectfully submitted,

*/s/ Paul G. Gizzi*
*/s/ Brenda W.M. Chang*
*/s/ John C. Lehmann*
_____

Paul G. Gizzi
Brenda W.M. Chang
John C. Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-1100

## **CERTIFICATE OF SERVICE**

I certify that on July 27, 2018, I electronically filed the foregoing PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR THE IMPOSITION OF A CIVIL MONEY PENALTY AGAINST DEFENDANT JOHN MADSEN with the Clerk of this Court using the CM/ECF system, and I am relying upon the transmission of the Clerk's Notice of Electronic Filing for service upon all parties of record in this case.

*/s/ John C. Lehmann*

John C. Lehmann